UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARBARA A. GILLISPIE,

      Plaintiff,

v.                                          Case No. 1:13-cv-336
                                             Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
                                         /

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on September 17, 1967 (AR 154).[1] She alleged a disability onset date of September 8, 2008 (AR 154). Plaintiff completed two years of college and had previous employment as an assistant manager at a fast food restaurant, a cleaning person, a cook at a nursing home, a crew person at a fast foot restaurant and a customer service representative at a video rental store (AR 159). Plaintiff identified her disabling conditions as Hepatitis C, depression, COPD (chronic obstructive pulmonary disease), anxiety, and a "back and ankle problem" (AR 158). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 14, 2012 (AR 44-54). This decision, which was later approved by

---

[1] Citations to the administrative record will be referenced as (AR "page #").

the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that while plaintiff had an alleged disability onset date of September 8, 2008, she engaged in

substantial gainful activity from October 2010 through June 2011(AR 44, 46).  Nevertheless, plaintiff had a continuous 12-month period in which she did not engage in substantial gainful activity, that being from September 2008 through October 2010, and then from July 2011 through December 14, 2012 (AR 46, 54).  In addition, plaintiff met the insured status requirements of the Social Security Act through March 30, 2016 (AR 46).

At the second step, the ALJ found that plaintiff had the following severe impairments: disorders of the lumbar and cervical spine; left knee osteoarthritis; heel spur syndrome; asthma/COPD; Hepatitis C; depression; anxiety; bipolar disorder; borderline personality disorder; and opiate dependence (AR 47).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 47).  Specifically, plaintiff did not meet the requirements of Listings 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders) or 12.09 (substance addiction disorders) (AR 47-48).

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she may stand/walk up to a total of four hours in an eight hour workday, with the option to alternate sitting and standing every 15 minutes while at workstation, not being off task while changing positions.  She may occasionally operate foot controls and frequently reach.  She may never climb ladders ropes or scaffolds, and may occasionally climb ramps and stairs, and occasionally stoop, kneel, crouch and crawl.  She may never work around unprotected heights.  She can tolerate occasional exposure to atmospheric conditions (such as fumes, dusts and gases) and temperature extremes (heat and cold).  She is limited to simple, routine and repetitive tasks and occasional interaction with supervisors, coworkers and the public.

(AR 48).  The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 52).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in both the national and regional economies (AR 53-54).[2] Specifically, plaintiff could perform the following jobs: file clerk (165,250 jobs in the national economy and 3,800 jobs regionally); mail clerk (115,000 jobs in the national economy and 2,000 jobs regionally); and security guard (1 million jobs in the national economy and 2,230 jobs regionally) (AR 53-54). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from September 8, 2008 (the alleged onset date) through December 14, 2012 (the date of the decision) (AR 54).

### III. ANALYSIS

Plaintiff raised one issue (with sub-issues) on appeal:

**A.   Did the Commissioner err as a matter of law by failing to properly weigh the medical opinion evidence.**

   **1.   The Commissioner erred by weighing the opinion of a single decision maker as a medical source.**

Plaintiff contends that the ALJ improperly gave weight to the opinion of a single decision maker (SDM) as if it were a medical source opinion. One court explained the SDM model used in disability determinations as follows:

> The single-decision maker (SDM) model was used pursuant to 20 C.F.R. § 404.906(b)(2). This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants. The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan. This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing. Most significantly, it allowed the state agency employee (the single

---

[2] While the ALJ did not define the "regional economy," the VE identified the regional economy as the State of Michigan (AR 31).

> decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical consultants. The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA–4734–BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05.

*Guyaux v. Commissioner of Social Security*, No. 13-12076, 2014 WL 4197353 at *17 (E.D. Mich. Aug. 22,2014) (footnote and citations omitted). "Once the claimant's application reaches the ALJ, however, the SDM's assessment is no longer relevant to the determination of disability." *White v. Commissioner of Social Security*, No. 12-cv-12833, 2013 WL 4414727 at *8 (E.D. Mich. Aug. 14,2013).

Here, the ALJ considered on the opinion of Christy James (AR 51), who prepared a physical residual functional capacity (RFC) assessment (Exhibit 19F), which supported the initial decision for plaintiff's application for disability. In the RFC, Ms. James identified herself as a "medical consultant" as opposed to a SDM (AR 475-80). The ALJ addressed her opinion as follows:

> As for the opinion evidence, Christy James opined in December 2011 that the claimant could perform light work with limited foot controls and with postural and environmental limitations (Ex. 19F). Jones [sic] identifies herself as a medical consultant, but her qualifications are not listed.

(AR 51). In her response in support of the ALJ's decision, defendant states that the ALJ "may have mistakenly identified Ms. James as a medical consultant" but that this was harmless error. Defendant's Brief at p. 13. Defendant's response confuses the issue because, based on the record, the ALJ did not mistakenly identify Ms. James as a medical consultant; rather, the ALJ accurately stated that Ms. James identified herself as a medical consultant.

Furthermore while defendant contends that the ALJ's decision was harmless error, she does not address the substance of the issue. *Id.* Other courts have determined that it is reversible error for an ALJ to treat the opinion of a non-physician SDM as that of a physician. *See Hensley v. Commissioner of Social Security,* No. 10-11960, 2011 WL 4407458 at *8-9 (E.D. Mich. Aug. 23, 2011) (where an ALJ believed that an SDM was actually a physician and relied heavily on that opinion to establish the claimant's RFC, the ALJ's error required a remand for redetermination of the claimant's functional capacity). *See also*, *Fowler v. Commissioner of Social Security*, No. 12-12637, 2013 WL 5372883 at *4 (E.D. Mich. Sept. 25, 2013) ("[t]he Commissioner's attempt to expand the application of the SDM model beyond the initial determination of disability and through proceedings before the ALJ is unpersuasive"); *Maynard v. Astrue*, No. 11-12221, 2012 WL 5471150 at *6-7 (E. D. Mich. Nov. 9, 2012) (where an ALJ erroneously relied on an SDM's opinion as state agency medical opinion, the error required a remand for further proceedings); *Dorrough v. Commissioner of Social Security*, No. 11-12447, 2012 WL 4513621 at *1-2 (E.D. Mich. Oct. 2, 2012) (the use of the SDM meant that there were no "medical opinions of the State agency and consultative physician" upon which the ALJ could properly have relied in determining whether the claimant met the requirements of a listed impairment). Based on this record, the Court concludes that a remand is necessary (1) to clarify Ms. James' qualifications, (2) to clarify whether she was qualified to express a medical opinion, and (3) to clarify the weight, if any, accorded to her opinion. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for consideration of these three issues.

    **2.**    **The Commissioner erred by failing to afford controlling weight to plaintiff's treating physicians' opinions.**

> **3. The Commissioner erred by failing to balance the factors set forth in 20 C.F.R. § 414.1527(c).**
>
> **4. The Commissioner erred by failing to provide good reasons for rejecting the opinions of plaintiff's treating physicians.**

Next, plaintiff contends that the ALJ failed to give controlling weight to the opinions of plaintiff's treating physicians, Joel Bates, D.O., and Mark Clark, M.D., as well as to the opinions of a Barbara Rounds, an Occupational Therapist ("OTR").

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ evaluated the medical opinions of Ms. Rounds, Dr. Bates and Dr. Clark as follows:

> Barbara Rounds, OTR, concluded in March 2012 that the claimant could occasionally lift up to 20 pounds, but never lift from the floor to waist, could never squat, and could only occasionally sit, stand, walk, climb stairs, and reach overhead (Exs. 23F, 27F). She further opined that the claimant could perform less than a full range of sedentary work, but not full-time due to "serious limitations as to pace and concentration", would need a "sit-and-rest" option as dictated by fatigue, breathing difficulties, and pain, and would miss 3 days or more of work per month (Exs. 22F,23F). Joel Bates, DO, and Mark Clark, MD, agreed with the limitations of Rounds (Exs. 26F, 36F). Rounds in a registered occupational therapist who conducted a functional capacity evaluation in March 2012 (Ex. 23F). She is not an acceptable medical source under our regulations. Dr. Clark and Dr. Bates are acceptable medical sources who have treated the claimant (Exs. 15F, 36F). I afforded only some weight to the results of this examination and their endorsement by the doctors because it is not consistent with any other physical examination, with her recent work history performing 30 hours of light work per week, or with the treatment notes from these providers.

(AR 52).

As an initial matter, Ms. Rounds' opinion was not entitled to the controlling weight given to the opinion of an "acceptable medical source" such as a licensed physician. *See* 20 C.F.R. § 404.1513(a) (stating that "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment[]" and defining acceptable medical sources

9

as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only)). Because Ms. Rounds is an occupational therapist, her opinion is considered as evidence from an "other" source. *See* 20 C.F.R. § 404.1513(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See*, *e.g.*, *Engebrecht v. Commissioner of Social Security*, -- Fed. Appx. --, 2014 WL 3409520 at *6 (6th Cir. July 14, 2014) (the opinion of a therapist "is not properly classified as an 'acceptable medical source' opinion but is an 'other source' opinion" under 20 C.F.R. § 404.1513(d)). Accordingly, plaintiff's claim of error with respect to Ms. Rounds will be denied.

The Court reaches a different conclusion with respect to the ALJ's evaluation of the opinions given by Dr. Clark and Dr. Bates. In a one sentence note dated September 11, 2012, Dr. Clark stated that he agreed with the RFC evaluation prepared by Ms. Rounds on March 6, 2012 (AR 613). Dr. Bates signed a similar note expressing agreement on March 30, 2012 (AR 553). While the ALJ gave reduced weight to Drs. Clark and Bates' endorsement of the limitations as inconsistent with the doctors' treatment notes in Exhibits 15F and 36F (AR 449-56, 613), he did not address the contents of those notes or describe how the notes were inconsistent with the limitations identified by Ms. Rounds. In this regard, while Exhibit 15F includes treatment notes from Dr. Bates, Exhibit 36F are not treatment notes, but Dr. Clark's statement adopting Ms. Rounds' RFC evaluation. A review of the record indicates that Dr. Clark's treatment notes appear in at least two other exhibits not cited by the ALJ, 25F (AR 545-51) and 33F (AR 577-89). Based on this record, the ALJ failed

to give good reasons for the weight assigned to the opinions of Dr. Bates and Dr. Clark. *See Wilson*, 378 F.3d at 545. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the medical opinions expressed by Dr. Bates and Dr. Clark.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Ms. James' RFC assessment and then (1) clarify Ms. James' qualifications, (2) clarify whether she was qualified to express a medical opinion, and (3) clarify the weight, if any, accorded to her opinion. In addition, the Commissioner should re-evaluate the medical opinions expressed by Dr. Bates and Dr. Clark. A judgment consistent with this opinion will be issued forthwith.

Dated: September 11, 2014          /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge